UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RYAN MANZI,

                Plaintiff,

-against-

OFFICER JUSTIN GOLDFINE and
SERGEANT JAMES SIRRINE,

                Defendants.

**OPINION & ORDER**

23-CV-05176 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Ryan Manzi ("Plaintiff") commenced this action on June 20, 2023 against City of Beacon Police Officer Justin Goldfine ("Goldfine") and City of Beacon Police Sergeant James Sirrine ("Sirrine" and together, "Defendants"). (Doc. 1). Plaintiff presses two claims in the Second Amended Complaint—the operative pleading—pursuant to 42 U.S.C. § 1983 for (i) false arrest and (ii) malicious prosecution. (Doc. 18, "SAC").

Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant moved to dismiss on January 12, 2024, in accordance with the briefing schedule set by the Court. (Doc. 20). Defendants filed a memorandum of law and an attorney affidavit from Kimberly Hunt Lee attaching exhibits in support of their motion to dismiss. (Doc. 21, "Lee Aff."; Doc. 22, "Def. Br."). Plaintiff filed a memorandum of law and an attorney affidavit from Ryanne Guy Konan attaching exhibits in opposition to Defendants' motion to dismiss. (Doc. 26, "Pl. Br."; Doc. 29, "Konan Aff."). The motion was fully submitted upon the filing of Defendants' reply. (Doc. 27, "Reply").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

1

## BACKGROUND

Plaintiff, at the time of the events giving rise to this litigation, was on probation for an unrelated matter and had an order of protection entered against him in favor of John Yarbough, who resides at 426 Main Street, Beacon, New York. (*Id.* ¶¶ 11, 14). The order of protection prohibits Plaintiff from coming within 500 feet of Mr. Yarbough, or his home, school, business, or place of employment. (SAC Ex. A). Plaintiff was involved in an altercation outside a restaurant located at 424 Main Street, Beacon, New York on March 20, 2022 at approximately 4:00 p.m. with Edward Lopez and Jon Lombardi Jr. (*Id.* ¶ 12). Plaintiff, after the altercation outside the restaurant, was driving eastbound on Main Street at around 6:00 p.m. when Lopez, according to Plaintiff, drove up westbound on Main Street, striking Plaintiff's car and pinning it between his truck and a parked vehicle. (*Id.* ¶ 13). Police vehicles, with their lights and sirens activated, approached Plaintiff's vehicle as Defendants ran towards the site of the collision on foot. (Konan Aff., Ex. E). Plaintiff reversed his vehicle to maneuver past Lopez's truck and drove away from the scene of the accident as Defendants were running to the scene. (Lee Aff. Ex. E). Plaintiff collided with a parked vehicle as he was attempting to maneuver around Lopez's truck. (*Id.*). Defendants arrived on the scene and initially handcuffed Lopez but released him soon after speaking with him. (*Id.*). Defendants canvassed the scene immediately after the collision, speaking with five eyewitnesses to the initial altercation and the subsequent collision including Lopez and Yarbough. (*Id.*). Yarbough told Sirrine that he had an order of protection in his favor against Plaintiff. (*Id.*).

Lopez provided Defendants with two statements, which were attached to the accusatory instruments. (Lee Aff., Ex. B). Lopez provided the following signed statement to Defendant Goldfine on March 20, 2022 at 5:35 p.m.:

> On 03/20/2022 at approximately 5:17pm, a male who I identified as Ryan Manzi due to having multiple past incidents with him, entered the vestibule of Carter's Restaurant and Lounge where I am the owner. Upon Manzi entering 424 Main Street he began to have a verbal altercation with me stating 'fuck you' multiple times. I immediately locked the front entrance doors in order to prevent him from entering and called the Beacon Police Department while Manzi used his fists to bang on the door. I am aware that Ryan Manzi has an active order of protection which is a full stay away, advising him to stay 500 feet from 426 Main Street issued to him by the Poughkeepsie City Court by the Honorable Judge Volkman on 11/30/2021. 426 Main Street is directly next to 424 Main Street which means he violated the Order of Protection issued to him. I have provided [the] Beacon Police Department with video footage of Ryan Manzi being at the location stated.

(*Id.* at 10). Lopez also provided a second signed statement to Defendant Goldfine on March 20, 2022 at 6:58 p.m.:

> On 03/20/2022 at approximately 6:30pm I received a phone call from my business partner Jonathan Lombardi stating there was an altercation at the restaurant. I then drove over to 424 Main Street to see that all of my customers and staff were standing outside and Ryan Manzi whom I have had a verbal altercation with earlier today was without a shirt getting into a Grey Honda Civic bearing NY registration JPR-5839. I then pulled my vehicle in front of the vehicle Manzi was in and stated 'you're not going anywhere.' I then tried to use my vehicle to prevent him from leaving the scene. Manzi then accelerated and forced his vehicle between my truck and a parked vehicle bearing Arizona registration BFA-7B4A causing damage to both vehicles before driving away.

(*Id.* at 9).

Defendants drafted an accusatory instrument charging Plaintiff with (i) Criminal Mischief in the Third Degree, (ii) Criminal Mischief in the Fourth Degree, (iii) Reckless Endangerment in the Second Degree, (iv) Criminal Contempt in the Second Degree, (v) Reckless Driving, and (vi) Leaving the Scene of an Incident without Reporting. (*Id.* ¶ 19). The application in support of the arrest warrant did not contain a supporting statement from Yarbough and contained unspecified "false information." (*Id.* ¶ 21). Judge Gregory J. Johnston signed an arrest warrant for Plaintiff on

3

March 21, 2022. (*Id.* Ex. D). Plaintiff was arrested on May 14, 2022 and charged with "[1] Criminal Mischief in the Third Degree, a E Felony in violation of New York Penal Law (NYPL) 145.05; [2] Criminal Mischief in the Fourth [Degree] in violation of NYPL 145.00, an A Misdemeanor; [3] Reckless Endangerment in the Second Degree in violation of NYPL 120.20, an A Misdemeanor; [4] Criminal Contempt in the Second Degree in violation of NYPL 215.50(3), an A Misdemeanor; [5] Reckless Driving in violation of 1212 New York Vehicle and Traffic Law (NY VTL), an unclassified misdemeanor; and [6] Leaving the Scene of an Incident Without Reporting, a traffic violation." (*Id.* ¶ 22). Plaintiff alleges that Defendants arrested and prosecuted him based solely upon "allegations made by a person that they knew were not accurate." (*Id.* ¶ 23). Defendants drafted the accusatory instruments, forwarded them to the District Attorney's Office, and filed them with the City of Beacon City Court. (*Id.* ¶ 26). All charges against Plaintiff were dismissed on February 1, 2023. (*Id.* ¶ 27).

## STANDARD OF REVIEW

I.      Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

II.     Documents Considered on a Motion to Dismiss

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d

5

104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ("Where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.").

Both sides submitted extraneous documents for the Court's consideration in connection with the motion to dismiss.

Plaintiff attached the following documents as exhibits to the Second Amended Complaint: (i) an Order of Protection against Plaintiff in favor of John Yarbough (SAC Ex. A); (ii) accusatory instruments and a supporting statement from Edward Lopez (*Id*. Ex. B; Ex. C); and (iii) an arrest warrant signed by Judge Gregory J. Johnston on March 21, 2022 (*Idi.* Ex. D). The Court can and does consider these documents when analyzing Defendants' motion to dismiss.[2] *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (noting that a district court may consider "documents attached to the complaint as exhibits" when considering a motion to dismiss pursuant to Rule 12(b)(6)).

Defendants submitted the following extraneous documents in support of their motion: (i) an incident report dated March 20, 2022 (Doc. 21-4); (ii) videos from Defendants' body-worn cameras (Doc. 21-5); (iii) an arrest report dated May 14, 2022 (Doc. 21-6); and (iv) an arrest

---

[2] Defendants note that the Second Amended Complaint only annexes a part of the accusatory instruments because it omits one of the two supporting statements made by Edward Lopez. (Def. Br. at 5). Defendants submit the complete accusatory instruments, which includes both of the supporting statements made by Mr. Lopez. (Lee Aff. Ex. B). The Second Amended Complaint repeatedly refers to the statements made by Mr. Lopez in support of the accusatory instruments, and Plaintiff's claims rely heavily upon the accusatory instruments and Mr. Lopez's supporting statements. (SAC ¶¶ 19-21, 26). Plaintiff does not oppose Defendants' request that the Court consider the complete accusatory instruments, including both supporting statements by Mr. Lopez. Accordingly, the Court can and does consider the accusatory instruments, including both supporting statements by Mr. Lopez, as both incorporated by reference and integral to the Second Amended Complaint.

warrant signed by Judge Scott L. Volkman dated April 6, 2022 (Doc. 21-7). Plaintiff submitted videos from Defendants' body-worn cameras. (Doc. 29-5).

The Second Amended Complaint does not refer to the March 20, 2022 incident report, the May 14, 2022 arrest report, or the April 6, 2022 arrest warrant signed by Judge Volkman. Nor do the allegations of the Second Amended Complaint heavily rely upon the contents of these documents. These documents are not incorporated by reference or integral to the Second Amended Complaint.[3]

With respect to the video footage, "courts specifically may consider video footage at the motion to dismiss stage when the footage is referenced in the complaint and key allegations in the complaint rest on the video." *Palm v. Brooks*, No. 22-CV-09729, 2024 WL 1908388, at *2 (S.D.N.Y. May 1, 2024) (citing *Norales v. Acevedo*, No. 21-549, 2022 WL 17958450, at *2 (2d Cir. Dec. 27, 2022); *see also Cook v. Dubois*, No. 19-CV-08317, 2021 WL 91293, at *2 (S.D.N.Y. Jan. 11, 2021) ("The prison's security cameras recorded the altercation in its entirety, and the footage is incorporated by reference in Plaintiff's Amended Complaint by several instances where the Amended Complaint states that Plaintiff's allegations are confirmed by the video."); *Komatsu v. City of New York*, No. 18-CV-03698, 2019 WL 4805904, at *8 (S.D.N.Y. Sept. 30, 2019) (citing *Garcia v. Does*, 779 F.3d 84, 87-88 (2d Cir. 2015)) ("The Complaint incorporates by reference security footage of the Bronx courthouse on the day of the Resource Fair Incident."). The Second Amended Complaint specifically and repeatedly references the body camera footage. (SAC ¶¶ 13

---

[3] Defendants alternatively argue that the Court can take judicial notice of these documents. (Def. Br. at 4). "It is worth noting that several courts have taken judicial notice of incident reports, arrest reports, police reports, and similar materials on a motion to dismiss, not for the truth of their contents, but rather to establish their existence." *Alvarez v. Cnty. of Orange, N.Y.*, 95 F. Supp. 3d 385, 397 (S.D.N.Y. 2015) (collecting cases). Accordingly, while the Court could take judicial notice of the incident report, arrest report, and arrest warrant signed by Judge Volkman, there is simply no reason to do so here. Neither party actually utilizes any of these documents in their motion papers.

("The police officers were in possession of the body cam footage. The body cam footage shows clearly that Mr. Edward was the aggressor. With the body cam footage, it was Mr. Lopez who caused damages to Plaintiff's vehicle."), 79 ("The police officers had no probable cause to arrest Plaintiff, since the officers had in their possession the bo[d]y camera footage, which clearly contradicted the witness' statement and allegation.")). Accordingly, the Court will consider the body-worn camera footage in adjudicating the motion to dismiss as the footage is incorporated by reference and integral to the Second Amended Complaint.

## ANALYSIS

Plaintiff presses two claims for relief under 42 U.S.C. § 1983 for false arrest and malicious prosecution. The Court addresses each claim for relief in turn.

### I.     First Claim for Relief: False Arrest

A claim for false arrest under Section 1983 "is substantially the same as a claim for false arrest under New York law." *Bonadies v. Town of Amenia*, No. 19-CV-10890, 2020 WL 5209510, at *10 (S.D.N.Y. Aug. 31, 2020) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, to "make a claim of false arrest, a plaintiff must show that: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *DeJesus v. City of N.Y.*, 55 F. Supp. 3d 520, 523 (S.D.N.Y. 2014) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (quoting *Bernard*, 25 F.3d at 102). Defendants argue that there was probable cause to arrest Plaintiff, and thus Plaintiff's false arrest claim must fail. (Def. Br. at 8-10). The Court agrees.

"Probable cause to arrest . . . exists when the officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Wierzbic v. Howard*, 836 Fed. App'x 31, 34-35 (2d Cir. 2020). To state a claim for false arrest in a "case involving multiple charges, it is irrelevant whether probable cause exists for each individual charge; instead, probable cause need only exist for the arrest." *Caraballo v. City of New York*, No. 21-CV-00285, 2024 WL 1332609, at *4 (E.D.N.Y. Mar. 28, 2024) (citing *Jaegly v. Couch*, 439 F.3d 149, 153-54 (2d Cir. 2006)). The existence of an arrest warrant establishes a presumption that the arresting officers had probable cause to effectuate the arrest. *Gleis v. Buehler*, 374 F. App'x 218, 220 (2d Cir. 2010); *Galarza v. Monti*, 327 F. Supp. 3d 594, 602 (S.D.N.Y. 2018), *appeal dismissed sub nom. Galarza v. N.Y.C. Police Dep't*, No. 18-2715, 2019 WL 4409695 (2d Cir. July 22, 2019) ("Under New York Law, '[a]n arrest warrant validly issued by a court having jurisdiction precludes an action for false arrest against the municipality and the police officer involved with its execution.'"). A plaintiff can rebut this presumption by showing that the arresting officers "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his [probable cause] affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." *Gleis*, 374 F. App'x at 220.

Plaintiff concedes that his arrest was executed pursuant to an arrest warrant (SAC ¶ 21), but nevertheless argues that the accusatory instruments were defective because they falsely allege that Plaintiff—and not Mr. Lopez—was the initial aggressor. (Def. Br. at 7-9). Plaintiff's argument misses the mark. Whether Plaintiff was the initial aggressor in the altercation that day between himself and Mr. Lopez is not relevant to the inquiry of whether probable cause existed for his arrest. The body-worn camera footage clearly shows Plaintiff's vehicle colliding with Mr. Lopez's

truck, and further shows Plaintiff maneuvering around Mr. Lopez's truck and quickly driving away from the scene of the accident as police officers are running to that scene. (Lee Aff. Ex. E). Defendants immediately canvassed the area following the collision, speaking with Mr. Lopez, Mr. Yarbough, as well as a number of other individuals. (*Id.*). Mr. Yarbough, who was standing near the site of the collision—told Defendants that there was an order of protection in his favor against Plaintiff, and further that Plaintiff was harassing him earlier that day. (*Id.*). Defendants observed Plaintiff fleeing the scene of an accident and took statements from individuals stating that Plaintiff was in violation of an order of protection. The footage from Defendants' body-worn cameras makes clear Defendants had probable cause to arrest Plaintiff for criminal contempt and leaving the scene of an accident. The arrest warrant issued by Judge Johnston on March 21, 2022 gives rise, separately, to a presumption of probable cause. (SAC Ex. D). Plaintiff has failed to allege that Defendants "knowingly and intentionally" made any false statements or omissions that would be relevant to the probable cause determination. *Gleis*, 374 F. App'x at 220. Plaintiff's conclusory allegation that Defendants obtained an arrest warrant based on information that "they knew were not accurate" is insufficient as Plaintiff fails to allege what these inaccuracies are. (SAC ¶ 23). The statements made by Mr. Yarbough and Mr. Lopez to Defendants were consistent with the footage from the body-worn cameras. Plaintiff has not, when drawing all reasonable inferences in his favor, rebutted the presumption of probable cause established by the arrest warrant. In addition, the body-worn camera footage independently supports a finding of probable cause to arrest Plaintiff.

Accordingly, the Court grants Defendants' motion to dismiss with respect to the first claim for relief under Section 1983 for false arrest.

## II.  Second Claim for Relief: Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citing *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). Under New York and federal law, a plaintiff must allege: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Franco v. Gunsalus*, No. 22-339, 2023 WL 3590102, at *4 (2d Cir. May 23, 2023) (quoting *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021)). "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S.Ct. 1332, 1335 (2022). In addition, when pressing a malicious prosecution claim under § 1983, the plaintiff must show also "that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

Just as with false arrest, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello*, 612 F.3d at 161-62 (quoting *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003)). "The Second Circuit has clarified that probable cause for a malicious prosecution claim means probable cause to believe that the prosecution could succeed." *Delanuez v. City of Yonkers*, No. 20-CV-04476, 2022 WL 16540682, at *8 (S.D.N.Y. Oct. 28, 2022) (citing *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)). "Probable cause, in the context of malicious prosecution, has been described as such facts and circumstances as

11

would lead a reasonably prudent person to believe the plaintiff guilty. Probable cause to prosecute should not be conflated with probable cause to arrest. Indeed, the probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Thompson v. Clark*, No. 23-900, 2024 WL 2720230, at *3 (2d Cir. May 28, 2024). "Unlike the false arrest analysis, however, Defendants here must have had probable cause for each charge for which Plaintiff was prosecuted." *Rodriguez v. New York City Police Dep't*, No. 10-CV-00891, 2011 WL 5057205, at *5 (S.D.N.Y. Oct. 24, 2011); *see also Malarczyk v. Lovgren*, No. 22-504, 2023 WL 8073099, at *2 (2d Cir. Nov. 21, 2023) (citing *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021)) ("Probable cause to prosecute is a complete defense to a claim of malicious prosecution but such probable cause must be shown as to each crime charged in the underlying criminal action."); *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *10 (S.D.N.Y. Dec. 18, 2020) (in the context of malicious prosecution, probable cause is required "for each charge" and therefore "the Court must separately consider each count with which Plaintiff was charged"). "If probable cause existed at the time of an arrest, it continues to exist at the time of prosecution unless it is undermined by the discovery of some intervening fact." *Malarczyk*, 2023 WL 8073099, at *2 (citing *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)).

Defendants argue that probable cause existed to prosecute Plaintiff and that Plaintiff's allegations "make clear that the defendants had reasonably trustworthy information of facts and circumstances sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." (Def. Br. at 12 (citing *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007))). Plaintiff argues that Defendants lacked probable cause because they "knew that the information received were not accurate." (Pl. Br. at 11 (citing SAC ¶

12

23)). The only support that Plaintiff provides for this argument is the body-worn camera footage which Plaintiff claims shows that he did not commit any crimes. (*Id.*).

Plaintiff alleges that, after being arrested on May 14, 2022, he was charged with: "[1] Criminal Mischief in the Third Degree, a E Felony in violation of New York Penal Law (NYPL) 145.05; [2] Criminal Mischief in the Fourth [Degree] in violation of NYPL 145.00, an A Misdemeanor; [3] Reckless Endangerment in the Second Degree in violation of NYPL 120.20, an A Misdemeanor; [4] Criminal Contempt in the Second Degree in violation of NYPL 215.50(3), an A Misdemeanor; [5] Reckless Driving in violation of 1212 New York Vehicle and Traffic Law (NY VTL), an unclassified misdemeanor; and [6] Leaving the Scene of an Incident Without Reporting, a traffic violation." (SAC ¶ 22). Each charge must be considered separately.

"A person is guilty of criminal mischief in the third degree when, with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . damages property of another person in an amount exceeding two hundred fifty dollars." N.Y. Penal Law § 145.05. "A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . recklessly damages property of another person in an amount exceeding two hundred fifty dollars." N.Y. Penal Law § 145.00. "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." N.Y. Penal Law § 120.20. "A person is guilty of criminal contempt in the second degree when he engages in . . . [i]ntentional disobedience or resistance to the lawful process or other mandate of a court." N.Y. Penal Law § 215.50(3). A person is guilty of reckless driving when he or she drives "in a manner which unreasonably interferes with the free and proper use of the public highway, or unreasonably

endangers users of the public highway." N.Y. Veh. & Traf. Law § 1212 A person is guilty of leaving the scene of an incident without reporting when that person "who, knowing or having cause to know that damage has been caused to the real property or to the personal property . . . of another, due to an incident involving the motor vehicle operated by such person" does not, "before leaving the place where the damage occurred, stop, exhibit his or her license and insurance identification card for such vehicle, when such card is required pursuant to articles six and eight of this chapter, and give his or her name, residence, including street and number, insurance carrier and insurance identification information including but not limited to the number and effective dates of said individual's insurance policy, and license number to the party sustaining the damage, or in case the person sustaining the damage is not present at the place where the damage occurred then he or she shall report the same as soon as physically able to the nearest police station, or judicial officer." N.Y. Veh. & Traf. Law § 600.

Defendants personally observed (as shown in the footage from Defendants' body-worn cameras) Plaintiff hitting Lopez's vehicle and then hitting a parked vehicle as he was leaving the scene. (Lee Aff., Ex. E). Lopez's statements, which were attached to the accusatory instrument, corroborate Defendants' observations. (Lee Aff., Ex. B). The allegations in the Second Amended Complaint, the documents attached thereto, and Defendants' body-worn camera footage show that "facts and circumstances exist as would lead a reasonably prudent person to believe" that Plaintiff was guilty of both criminal mischief charges, the reckless endangerment charge, and the reckless driving charge. *Thompson*, 2024 WL 2720230, at *3. Defendants accordingly had probable cause to prosecute Plaintiff for both criminal mischief charges, the reckless endangerment charge, and the reckless driving charge. The same is true of the leaving the scene of an incident charge. Defendants observed Plaintiff leave the scene of the incident, and as seen in the body-worn camera

footage, Plaintiff did not return to the scene to provide the required information to either Defendants, Lopez, or the owner of the parked vehicle that Plaintiff hit following the accident. (Lee Aff., Ex. E). Defendants accordingly had probable cause to prosecute Plaintiff for leaving the scene of an incident without reporting.

The Court turns next to the criminal contempt charge arising from Plaintiff's alleged violation of the order of protection against Plaintiff in favor of Yarbough. The collision between Lopez and Plaintiff occurred almost directly outside Yarbough's home, with whom Defendants spoke following Plaintiff's flight from the scene. (*Id.*). Yarbough told Defendants that he had an order of protection in his favor against Plaintiff. (*Id.*). The order of protection requires that Plaintiff stay at least 500 feet away from Yarbough and his home, which is located at 426 Main Street. (SAC Ex. A). The altercation between Plaintiff and Lopez, and the resulting collision between their vehicles, occurred at 424 Main Street. (Lee Aff., Ex. E). Lopez's statement to Defendants provides that "426 Main Street is directly next to 424 Main Street." (Lee Aff., Ex. B). These facts and circumstances would lead a reasonably prudent person to believe" that Plaintiff was guilty of the criminal contempt charge. Defendants accordingly had probable cause to prosecute Plaintiff for criminal contempt. *Thompson*, 2024 WL 2720230, at *3.

Plaintiff fails to plausibly allege that Defendants knew or had reason to know that the information they received from Mr. Lopez, as well as the other eyewitnesses they spoke with when they canvassed the scene of the accident, were untrue. Plaintiff's allegations—and the footage from Defendants' body-worn cameras—make clear that "such facts and circumstances existed as would lead a reasonably prudent person to believe" that Plaintiff was guilty of the charges at issue here at the time of the arrest. *Thompson*, 2024 WL 2720230, at *3. Plaintiff also fails to allege that Defendants discovered "some intervening fact" after the time of the arrest that would in any way

15

undermine the probable cause that was established at the time of Plaintiff's arrest. *Malarczyk*, 2023 WL 8073099, at *2. "Given these facts, the slightly higher standard of probable cause required in the malicious prosecution context that a reasonably prudent person would believe Plaintiff guilty has been met." *Fuentes v. Schemmer*, No. 18-CV-08207, 2023 WL 188739, at *11 (S.D.N.Y. Jan. 13, 2023). Plaintiff has failed to plausibly state a claim for malicious prosecution.

Accordingly, the Court grants Defendants' motion to dismiss with respect to the second claim for relief under Section 1983 for malicious prosecution.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and dismisses the Second Amended Complaint with prejudice.[4]

The Clerk of Court is respectfully directed to terminate the motion pending at Doc. 20 and close this case.

**SO ORDERED.**

Dated: White Plains, New York
       June 7, 2024

_____
PHILIP M. HALPERN
United States District Judge

---

[4] In light of the conclusions reached herein, the Court need not and does not address Defendants' arguments regarding qualified immunity.